I'd like to, with the court's permission, I'd like to focus my argument primarily on the 3582C argument, but before I do, I just want to make one observation with respect to the forfeiture issue, and that is essentially the government wants it both ways. When it comes to Mr. Brome, they demand strict compliance, and they say we should assume he received notice, and his failure to timely challenge that results in the loss of his ability to ever challenge the forfeiture forever. How would you win even if we had a less strict view of compliance? Well, first of all, the first question is whether the notice was valid at all, and our position is it was invalid because it had the wrong date, and that The question there is, is any error in that sufficient to say it is an invalid notice, or do we look to see whether on this particular set of facts anybody would be misled by a wrong date, by a typo? Are you willing to say that a typo, even though it is not misleading, is enough to make the notice invalid? So the first thing I would say is I don't think we're dealing with a typo here, and it's interesting because if you look at the actual forfeiture order, the government knew the right date because on the document, the actual forfeiture order, which they showed Well, it made a mistake. They made a mistake on the date. The date of seizure was September 12th, and they put October 7th because that was the day the DEA adopted it. So that was a mistake, but your client still got notice that it was about the property and the exact amount of the property, and how did that date, if he, assuming he received the notice, how would that date have made him think, oh, this is something else, I don't have to worry about it. So the first question we have is whether he assumed the notice, but even assuming he assumed the notice, we're talking about someone who did not graduate from high school, whose money was taken by a state agency, by the Lyons County Sheriff's Office, he receives, assuming he receives a notice, that has a different date, a different agency, and the question Although it's unclear from the record, he said he started out, he got this money from his, I think it was his grandmother, $21,800. He said he spent some of it. Whether he knew the actual amount, that's a different question. I don't think Anything on the record that suggests that he was in any way misled, assuming that he got it, that he would have been in any way misled as to what monies were being talked about. I think You know, if some other money had been seized at some time, then this might well matter, but why does it matter here? So Judge Calabresi, is there any, I think the fact that he didn't do anything until after the case suggests that, you know, he had a defense. When as soon as they took the money from him, he said this money has nothing to do Well, the answer to that is, you say he didn't get it. So, you know, we're in a situation where we're talking about a hypothetical. Is this something that would have confused him, had he gotten it? You say he didn't get it, and so we go back to the thing, whether it was enough to send it in a way that it might reasonably have gotten to him. I think it could be confusing, and the question is, we're not talking about whether the money was properly, whether he had a defense to the forfeiture or not. The question is, should he have his day in court? And what the issue is, a way I would ask is, let's say his notice came a day late. You said you didn't want to spend much time Right, right. I think on 25 of our appellate brief, we cite the 11th circuit, which says when we're talking about forfeiture, strict compliance is necessary, and that's what I think should happen here. Turning to the 3582C, the government essentially raises three arguments. One of them was rejected by this court previously, that is whether he was eligible for a 3582C motion in the first place. This court remanded, implicitly rejecting that argument. The government conceded in the district court. So then the question is, did the district court abuse its discretion? Now discretion is not unbridled, and what the court said is, Mr. Brougham has demonstrated an inability to reform his behavior, and what it looked to was conduct six years prior to when it was making its determination, and what happened in that six years from the time that it was looking for until the time it made its determination was we saw a model prisoner who had an exemplary record, and the question is, it's not a question of whether at some time in the past he demonstrated or showed an ability to be reformed. The question is, now when the court is looking for it, is this someone who could be reformed? Why is that the question? Well, that's the way the court framed it. The court relied on the fact that he is, he cannot be reformed. So you're now not focusing so much on the things that you said in your brief about it violated due process not to have a new PSR or not to have a hearing. You're saying, well, and you have trouble with that because we have too many cases with respect to that undue process, but we might want to say something about in our supervisory capacity, we think that in such situations, hearings should be given or more should be had. But basically, you're saying the court did not look to what we told it to look at. Judge Calabresi, I think it actually would be both things, because yes, there are cases this court has said that maybe there's no due process right to a hearing. The problem is over here, the judge sat down, when this motion was first made, the judge sat down the procedure. He said the government should respond, they'll get 30 days to respond, and then the defendant will have 30 days to respond. What happened? The government made a submission, six or seven days later, the court denied the motion. So it didn't even, it's one thing to say, we're not going to give you a right at all, but it's another thing to say, I'm going to give you the right, and then take it away from you. So that's the first thing. And then it goes back to remand, it goes back on remand, and the district court just issues its decision. Isn't what is going on here that this judge was giving a sentence which was below what the guidelines were and thought that he had taken everything into account already? I don't believe so, because one's Because of the contract, because of the agreement, which was well below what the guidelines would have said, and that the court said, well, you know, that's what they agreed to, and that's okay. I would have been inclined to give a bigger sentence if there hadn't been an agreement. But first of all, the agreement had a guideline range, which was lower, and that's what the agreement was based on, and then the Sentencing Commission lowered that from where it was in the agreement. So I don't think it's a situation where the court could say The client's sentence was already within the amended, the lowered amended guidelines range. I know. So the question is, but that's what Freeman says. The district court has the ability to reconsider, and that's what this court already has held, that it has the ability. Good morning, your honors. May it please the court. My name is Sean Eldridge. I'm an assistant United States attorney in the Western District of New York, and I represent the government on this appeal. The district court acted well within its considerable discretion in denying the appellant's motion for reduction under Section 3582, and the district court also properly determined that the government took reasonable steps to notify the appellant of the administrative forfeiture proceeding, and as such, this court should affirm both of the district court's orders. To talk first about the 3582 application, Judge Calabresi pointed out what happened below it. That's correct. The original range under the guidelines in the plea agreement was 188 to 235 months. Probation found it to be higher, 235 to 293, which the district court adopted. But nonetheless, the district court imposed the agreed upon 11C1C sentence of 204 months. What was the downward variance? It is, Judge, in the sense that, yes, well, right, he only had one option. He could either impose the C1C agreement or reject it, and he imposed the C1C agreement, which then also falls comfortably within the new range post the 3582 reduction, or excuse me, what's the basis for the 3582 reduction, the two-step change from the guidelines. Isn't this a case where Judge Siracusa said, here's what I did, and I'm not going to listen to anything else, you know? I then say something about this guy absconded, even though it turns out that that wasn't ever charged. That doesn't mean that isn't a serious thing, or that he had an assault, and the fact that he was acquitted, I don't care, and we say, well, come on now, think about this case, and it goes back, and he essentially says, I don't want to think about it. Now, I mean, the district court has a great deal of discretion, but doesn't this look as though you have a district judge who says, I decided what I wanted to decide, and I'm not going to think about anything else? No, Your Honor. Judge Calabresi, respectfully, I disagree with you. There is no doubt that after this court remanded saying, wait a minute, you cited some conduct that ultimately, you know, was an arrest that essentially went away, and you should go back and take a look at this. That's exactly what happened, Judge. The case came back down. The district court had a panoply of things in front of it. The PSR, the amended abbreviated PSR, which cites Mr. Brougham's conduct in terms of his good time credits. Mr. Brougham's own submissions that had the courses he had taken in jail. Judge Saragusa had a complete record in front of him. That he added. I'm sorry, Judge? What is it that Judge Saragusa added to, by way of explanation? Because the remand was, there is no explanation, so please explain. So two things. One factual, one legal. The factual part, he further discussed the fact that Mr. Brougham had had three instances on parole where he had gone back out on parole, had been violated, was revoked, and came back until he ultimately, his parole term just expired. On a legal matter, you know, the Supreme Court has subsequently decided Chavez Mesa, which says in effect that in a 3582 context, district courts don't need to provide very much explanation, if at all, in terms of, you know, Chavez Mesa is a case where the district judge essentially kind of checked the box that says, I've considered the factors, I've considered the 3553A factors. After considering that, I find that this is the appropriate sentence. And that's exactly what Judge Saragusa did in this point. In fact, he gave more explanation than what is required under the circumstances. What about your adversary's point that Mr. Brougham wasn't given an adequate opportunity to weigh in on the matter? So two things to that, Judge. Number one, Mr. Brougham, the matters that counsel cites now in terms of his rehabilitative efforts in prison, those are all in the record. That was all before Judge Saragusa. Number two, as I think the panel already referred to, there are a number of cases that say that that's not even required. The district court doesn't have to even appoint counsel in a 3582 proceeding. And here, Mr. Brougham had able counsel. In terms of the timing, once... I'm sorry, Your Honor. Counsel says it's different if you say, I mean, they might have said, Judge, look, I'm not going to... I've got enough here. I'm going to decide. But there is something troublesome about a situation where you say, I'm going to hear from this, and then you're going to be able to answer. And then you hear from this, and then the court says, sorry. I mean, that's a matter of procedure that isn't the very best procedure we would like, wouldn't it? I understand Your Honor's point. If I could address the timeline a little bit, because that only applies to the initial denial. What happened in the initial 3582 application is both the government and Mr. Brougham made their submissions. Judge Saragusa denied it. It came up on appeal. This court reversed, sent it back down. That decision was in the time that passed between the date of this court's decision and Judge Saragusa's subsequent decision. December 8th of 2016 is when this court decided the matter, sending it down. The mandate issued January 18th of 2017. And Judge Saragusa then ruled on it another two months later, March 8th of 2017. So that this, you know, I was given an opportunity to respond doesn't apply to the second situation. There was a three-month period from this court's decision where- The district court didn't say anything, didn't say not to submit anything, and in that period nothing was submitted by Mr. Brougham. Those are both, nor the government. Those are both accurate statements, Your Honor, yes. Unless there's questions on the 3582 matter, I'll move over to the forfeiture matter briefly. The forfeiture notice was reasonably calculated to apprise Mr. Brougham of the proceedings. Do you agree that the government has got the burden to show the adequacy of the forfeiture notice? There's kind of two prongs to it, Judge. That's correct. Yeah, so under Dusenberry, Mullane, this court's decision, and Lucas, you're right. The government has to show that we took reasonable steps to provide notice to the claimant. The second prong in terms of if a claimant wants to raise some version of the process beyond that was inadequate. One of the arguments Mr. Brougham raises is a combination of the DEA didn't prove that they knew at the time they sent the notice what the jail's procedures are, which there's no law that supports that proposition. But in any matter, the cases from other circuits that have addressed challenges based on a prison system's procedure invalid say that the plaintiff, the appellant, has to come forward with some evidence to say- Not the third circuit. The eighth circuit, yes, and the other two circuits go even further. But you have to put that in context of our law because before Dusenberry, our law was that there had to be actual notice. We get reversed in Dusenberg. But if you look to what the thrust of the law of the circuit is that we, our law goes as far protecting somebody in these cases as is permitted by Dusenberg because that's what our law was before. So that suggests that we would at least in this circuit semi-split be with the third circuit. I'm not saying that isn't bad in this case, but as a matter of what our law is with respect to who has to do what, I do think that there's a strong argument for saying that our law requires the government to come in. Not to say that they knew, because there's nothing anywhere that says anything about that, but that this was a way that a reasonable person who wanted to give notice would have given notice. But that's up to the government to show. No, Judge Calabresi, I agree with that as a general proposition, and that's what the government showed in this case. It took several steps. The notice that it first sent to Mr. Brougham, is it the address that Mr. Brougham- Do you think that even under the third circuit standard, you would prevail? I do, Judge. I think that the notice here that was- Is there something wrong with the third circuit? I mean, is there a problem with it that you can't, that you have trouble embracing? I haven't thought enough about the third circuit's standard to give a full answer. I was more focused on what the Supreme Court standard from Duesenberry is, and how that applies to what happened in this case. In terms of first giving notice to Mr. Brougham at the address he gave on the receipt form. Giving it again to Mr. Brougham at the jail through certified mail where it was signed for by an official. Giving the mail in addition to the same address by first class mail, so that it receives twice. So you don't have kind of the, I didn't sign the card, so it gets bounced back notice. That gets logged into the prison jail system. That log is attached as an affidavit, or excuse me, as an attachment to the jail deputy's affidavit. Who lays out the processes in the jail, which are almost identical to what the Supreme Court in Duesenberry. It's the facts of Duesenberry, it's completely on all fours. It is, Judge. I 100% agree. I've got eight seconds left, so unless the panel has further questions, we'd ask the court to affirm. Thank you very much. Just in regard to the original set, if the district court felt that a downward, as Judge Lohier says, the first time around he gave a downward variance. It only gets better for Mr. Brougham when the sentencing commission then lowers the guidelines, because it just- Unless you were telling us, unless the argument is that Judge Sirigusa failed altogether to exercise any discretion, it doesn't necessarily yield a lower sentence from an already low sentence. It doesn't, it could, the fact that the judge may deny a 3582C motion doesn't mean he abused his discretion. I would never say that, but the point is you have to give consideration to it. So the mere fact that he, in the past, downwardly varied does mean that he could just say, okay, like Judge Calabresi said, I don't have to consider this. I don't want to deal with it. Well, I don't think he can do that given the mandate. It's certainly given the mandate, and it's not just I don't want to consider it, I don't even want to hear from the parties. For all we know, the government, because the first time around, the district court adopted the government's position. It came straight out of the government's brief. Now that this court called a lot of that into question, the question is, give the government an opportunity to hear from them. And the government says, Mr. Brougham said nothing. We're talking about a pro se litigant here. I want to be clear. On the second go around, it wasn't that the government had a chance and you did not. No, right, nobody had a chance. The court just basically said on its own, I'm going to- I understood you the first time. The first time around, but the point is that Brougham was never given an opportunity to respond to the government. He made on his own a motion for reconsideration, which the district court gave the back of its hand. But the point is, after this, what should have happened is this case should have come back and notice should have been given to the parties. We don't even know he's a pro se litigant. I know the only way I receive this court's decisions is I get an email. Mr. Brougham certainly was not receiving an email. And what he received at the time the court made the decision, there's nothing in the record, but I have no idea about that. That may well be a better, best practice, but that's not what we require. That's not what's required. It's not what- I know it's not what we require in the first instance, but as I pointed out, when the judge set up a procedure from the beginning and didn't adhere to that procedure, that's a problem. Yes, there was- it went up to this court and came back down. But the point is, he didn't follow the procedure he set up originally. And then he basically, on remand, he says, I don't want to deal with this. And just, okay, I'll delete the sentence that the district court had a problem with, and now I'll deny it. That's a problem, and it's just inconsistent with the reality to say that he can't rehabilitate himself, when for the past six years before that, he has been, and just ignore it. Thank you. Thank you both. I will take it under advisement.